# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL SECURITY ARCHIVE,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>DEFENSE INTELLIGENCE AGENCY,  )<br>  )<br>Defendant.  )<br>_____ ) | Civil Action No. 19-0529 (CJN) |

## PLAINTIFF'S STATUS REPORT

Plaintiff National Security Archive ("Plaintiff") respectfully submits this Status Report.

1. Plaintiff's Complaint alleges that this action is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and seeks disclosure of files from three specific boxes of documents located in the Washington Records Center in Suitland, Maryland. Plaintiff's Complaint identifies the files by accession number, volume, location, file name and date, and box number. Docket Entry No. 1, Feb. 28, 2019.

2. The documents that Plaintiff seeks relate to a narrowly averted nuclear crisis that occurred in Europe in 1983, when North Atlantic Treaty Organization forces' annual exercise practicing nuclear release procedures put Soviet forces on high alert. *See* Docket Entry No. 1, Feb. 28, 2019. Lack of further escalation of the 1983 Soviet "War Scare" was largely due to Lieutenant General Perroots' decision not to raise U.S. readiness in response to Soviet forces' increased alert status. *Id.* Of particular interest to Plaintiff is an after-action letter written by General Perroots which provides a retrospective analysis of the scare ("the Perroots Memorandum").

3. Defendant, Defense Intelligence Agency ("Defendant" or "DIA"), a component-agency of U.S. Department of Defense ("DOD"), filed its Answer on May 10, 2019. Docket Entry No. 12, May 10, 2019.

4. On October 7, 2019, the Parties agreed to narrow the scope of the case to the 31 documents described in Appendix A. Docket Entry No. 7, October 7, 2019. The Parties' agreement to narrow the case was based on Plaintiff's review of 26 indices that purport to describe the three requested boxes' contents. Each of the 26 indices includes a column entitled "DESCRIPTION (Type, File, Reference, Date, Subject or Title, Copy Numbers, etc.). *See* Example index produced by DIA, "Box 1 Inventory 2" (attached as Appendix B).

5. One of the indices produced by DIA included two entries that likely described the Perroots Memorandum. *See* Appendix B, Control Nos. 1 (January 9, 1989 "End of Tour Report (Addendum) General Perroots") and 12 (March 17, 1989 "End of Tour Report (LtGen Perroots)"). Plaintiff's list of 31 documents includes these two entries. *See* Appendix A, Document Nos. 1 and 2.

6. Pursuant to the Court's April 1, 2020 order, since May 5, 2020, DIA has been providing Plaintiff with updates on the status of its FOIA processing operations in light of the COVID-19 global pandemic. *See National Security Archive v. Defense Intelligence Agency* Docket Report (accessed on May 10, 2021). Since November 2020, when DIA resumed some limited FOIA processing, DIA has provided four responses to Plaintiff, accounting for a total of eight documents.

7. To date, DIA has addressed 29 of the 31 documents described in Appendix A. Of the 29 documents, five have been withheld in full, 23 have been produced with varying degrees

of redactions,[1] and DIA has stated that they have been unable to find Document No. 2 of Appendix A. Appendix C summarizes the history of DIA's responses to date.

8. On April 31, 2021, DIA produced two documents with redactions. Apr. 30, 2021 Letter from S. Tumiski to N. Jones (attached as Appendix D). One of the two documents purported to be Document No. 1 from Appendix A. *Id.* ("This response addresses two of these documents: Items 1 and 27 of Appendix A.") As mentioned above, the index for the box in which Document No. 1 is located describes Document No. 1 as a January 9, 1989 "End of Tour Report (Addendum) General Leonard Perroots." *See* Appendix B.

9. The document produced as Document No. 1, however, is entitled "Using Earlier Warning to Improve Crisis Deterrence and Warfighting Capabilities - Executive Summary." *See* Appendix E. While the document is heavily redacted, Plaintiff's review of unredacted portions revealed that this document is not the End of Tour Report Addendum.

10. On May 5, 2021, Plaintiff informed DIA's counsel that it did not believe DIA had processed the correct document. *See* May 2021 Email Thread between H. Jacobs and A. Seabrook (attached as Appendix F).

11. DIA's counsel confirmed that the document reviewed was different than that described in the index as Document No. 1, stating: "This is the listing on the box inventory; however the title of the document included in the box is actually: Using Earlier Warning to Improve Crisis Deterrence and Warfighting Capabilities (this is what Defendant reviewed)." *See* Appendix F.

---

[1] Plaintiff will raise any concerns regarding the redactions of the 23 documents produced with redactions after DIA has completed its response with respect to the two outstanding documents.

12. DIA submitted a status report to the Court on May 7, 2021, indicating that it had produced two additional documents. Docket Entry No. 36, May 7, 2021. Nowhere in DIA's May 7, 2021 status report does DIA indicate that the document reviewed as Document No. 1 was not the same document described in the index. *Id.*

13. In fact, during the two years that this case has been pending (during which time DIA has been reviewing documents from the three boxes at issue), this is the first time DIA has indicated that any of the documents in the boxes were not the documents described in the indices. DIA's failure to disclose its improper storage and indexing of documents negates the entire premise of the Parties' October 7, 2019 agreement to narrow the case to 31 specific documents.

14. Accordingly, Plaintiff respectfully asks the Court to direct DIA to look through *all* the documents in the three boxes to identify the document described in the index as the "End of Tour Report (Addendum) General Leonard Perroots," and fully process and produce it by a date certain to be established by the Court.

## Plaintiff's Statement Regarding the Parties' Dispute

15. On February 16, 2021, the Department of State ("DOS") Office of the Historian published a transcribed version of the Perroots Memorandum in a new volume of the DOS series "Foreign Relations of the United States" (the "Transcription"). The Transcription of the Perroots Memorandum, with limited redactions, is available to the public at the following DOS link: https://static.history.state.gov/frus/frus1981-88v04/pdf/frus1981-88v04.pdf (numbered paragraphs 1–10 on pages 1426–1429). Relevant portions of the Transcription are attached as Appendix G.

16. DOS describes the text they transcribe in the volume as coming from a "January 1989 'End of Tour Report Addendum' by Lieutenant General Leonard H. Perroots . . . ." Appendix

4

G (p. 1426). As noted above, Plaintiff requested Document No. 1 of Appendix A based on its description in DIA's index (Appendix B) as a January 9, 1989 "End of Tour Report (Addendum) General Perroots." Thus, the Transcription and what DIA's index describes as a January 9, 1989 "End of Tour Report (Addendum) General Perroots," which Plaintiff requested as Document No. 1 of Appendix A, are likely one and the same.

17. Plaintiff informed DIA and its counsel of these developments in a February 26, 2021 letter. *See* Feb. 26, 2021 Letter from Plaintiff to S. Tumiski, DIA (attached as Appendix H). Plaintiff informed the Court of these developments in a status report on April 7, 2021. Docket Entry No. 35, April 7, 2021.

18. On April 30, 2021, DIA responded to Plaintiff's February 26 letter stating: "It is Defendant's position that the State Department's transcription of the said document does not appear to be word for word and most likely is a summary of information and, therefore, NSA is still required to fully process the documents, including allowing other components and agencies to review them." *See* Appendix F.

19. Federal law requires that, in publishing the series Foreign Relations of the U.S. Series, DOS must present <u>transcripts</u> of historical documents: The statute establishing the Foreign Relations of the U.S. Series requires that the volumes present "a thorough, accurate, and reliable documentary record of major United States foreign policy decisions . . . ." 23 U.S.C. § 4351. "Records" that appear in the series cannot be altered unless DOS indicates that an alteration has been made.[2] *Id*. ("Records shall not be altered and deletions shall not

---

[2] "Record" is defined to include "any written material (including any document, memorandum, correspondence . . . or other papers) . . . or other documentary material . . . made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its

5

be made without indicating in the published text that a deletion has been made.") In publishing the volume, DOS acknowledges the statute which established the Foreign Relations of the United States Series, its obligations under this statute, and indicates that it complied with all statutory obligations. Appendix G at p. III.

20. The text of the recently published volume of Foreign Relations in the United States Series notes certain deletions of classified materials. Otherwise, what has been published in the numbered paragraphs on pages 1426-1429 is verbatim text.

21. Therefore, other than where DOS has indicated that it has made a deletion or alteration to the text, its inclusion of text from the 1989 "End of Tour Report Addendum" is a transcription of what appears in the original version of the document, not a summary.

22. Plaintiff's counsel informed DIA of these facts on May 5, 2021. *See* Appendix F. However, DIA's status report to the Court does not mention that it was so informed by Plaintiff. Docket Entry No. 36, May 7, 2021.

23. If and when DIA does identify the correct document that its index describes as the End of Tour Report (Addendum), there can be no reason for DIA to withhold the parts of the document in its original form that DOS has released to the public in transcribed form. *See, e.g., Judicial Watch v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 238 (D.D.C. 2012) (information that is "already in the public domain" indicates that the agency is "legally required to disclose the documents.")

---

legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value in them, and such term does not include library or museum material made or acquired and preserved solely for reference or exhibition purposes, any extra copy of a document preserved only for convenience of reference, or any stocks of publications or of processed documents." *Id.* at § 4357(4).

Dated: May 11, 2021                               Respectfully submitted,

                                                  John S. Guttmann
                                                  D.C. Bar No.: 251934
                                                  Beveridge & Diamond, P.C.

                                                  <u>*//s// Hilary T. Jacobs*</u>
                                                  Hilary T. Jacobs
                                                  D.C. Bar No. 1021353;
                                                  Beveridge & Diamond, P.C.
                                                  1900 N Street N.W., Suite 100
                                                  Washington, D.C. 20036
                                                  Telephone: (202) 789-6020
                                                  Facsimile: (202) 789-6190
                                                  Email: jguttmann@bdlaw.com
                                                            hjacobs@bdlaw.com

                                                  *Counsel for Plaintiff*

7