**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
| NATIONAL SECURITY ARCHIVE, |
| |
| Plaintiff, |
| |
| v. | Civil Action No. 19-0529 (CJN)
| |
| DEFENSE INTELLIGENCE AGENCY, |
| |
| Defendant. |
| |

## DEFENDANT'S STATUS REPORT

Pursuant to the Court's Minute Order of May 13, 2021, instructing the government to file

a status report by June 7, 2021, Defendant Defense Intelligence Agency ("Defendant" or "DIA"),

a component-agency of U.S. Department of Defense ("DOD"), through counsel, respectfully

submits this Status Report.

## BACKGROUND

1.      The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request that is the subject of

this case sought disclosure of files from three specifically-identified boxes of records that

were in the possession of the National Archives and Records Administration ("NARA")

and located in the Washington Records Center in Suitland, Maryland.  The FOIA request

identified the requested files by accession number, volume, location, file name and date,

and box number.[1]  The FOIA request did not seek any item or information other than the

---

[1] The text of the FOIA request described the requested records as:
        records stored at the Washington Records Center in Suitland, Maryland (accession
        no. 0040, volume 3): DR's Official Correspondence File" (Jan-Dec 89), "DR's
        Message File" (Jan- Dec 89), and "DR's Chron Files of Correspondence" (1 Jan-
        15 May 89) in DIA Box Numbers 1/3, "DR's Chron Files of Correspondence" (16
        May-15 Nov 89) in DIA Box Numbers 2/3, and "DR's Chron Files of
        Correspondence (16 Nov-31 Dec 89) in DIA Box Numbers 3/3.

records that were contained in the three boxes, nor did it request that a search be conducted for any documents potentially housed outside of the three boxes.

2.      Upon receipt of the boxes and commencement of its initial hand-review of the boxes' contents, DIA discovered that the three boxes contained folders, and each folder within the boxes (26 folders total) contained an inventory of the content of that folder. These inventories of the boxes' contents were prepared by NARA, not by DIA.

3.      In August 2019 and September 2019, after processing the 26 inventories to withhold information subject to FOIA exemptions, Defendant produced the inventories to Plaintiff for review so that Plaintiff could potentially narrow the scope of records to be processed in response to Plaintiff's request.

4.      After reviewing the 26 inventories, Plaintiff voluntarily narrowed the scope of its request by asking that Defendant fully process only 31 documents. Plaintiff identified the 31 documents by inventory location (e.g., "Box 1, Inventory 2") and record name in a document Plaintiff titled "Appendix A." *See* Joint Status Report ¶ 7 (Oct. 7, 2019) [ECF No. 17] ("Plaintiff requests that Defendant fully process only the 31 documents described in Appendix A").

5.      As of the filing of this report, Defendant has processed and produced FOIA responses regarding 29 of the 31 documents listed in Appendix A.

**STATUS OF REMAINING RECORDS TO BE PROCESSED**

6.      The two remaining documents are awaiting review by Directorate of Intelligence subject matter experts who will make initial determinations regarding withholdings and whether there are any other government agencies or components with equities in the records. Barring the need to refer the records for further processing to another government agency

or component, DIA anticipates that it will be able to issue a response regarding these last

two records no later than July 15, 2021.

## DEFENDANT'S RESPONSES TO CURRENT DISPUTES

7.     On May 14, 2021, without first conferring with Defendant to determine whether any of its

concerns or questions could be resolved without Court intervention, Plaintiff filed a Status

Report [ECF No. 38] containing inaccurate factual assertions, inappropriate allegations that

DIA had engaged in misconduct, and requests that the Court issue an Order mandating that

Defendant take certain actions, including conducting a search for a specific document that

Plaintiff had hoped was in the boxes but was not.  Defendant hereby responds to Plaintiff's

statements and presents its position to the Court in advance of the Status Conference set

for June 8, 2021. [2]

### Plaintiff's Allegations Regarding DIA's
### Alleged Failure to Disclose Information

8.     The following two paragraphs from Plaintiff's May 14 Status Report reflect examples of

Plaintiff's accusations that DIA has acted improperly:

> Although DIA has been reviewing documents from the three boxes
> throughout the two years this case has been pending, at no point
> prior to May 7, 2021 did DIA suggest that the files in the three boxes
> might not be properly filed. It was not until Plaintiff specifically
> asked DIA if one of the documents it purported to produce was
> Document No. 1 of Appendix A that DIA acknowledged that the
> document listed in the index was different than that which was found
> in the actual box.  [ECF No. 38 at ¶ 5.]

> Despite having apparently conducted a previous review of the
> boxes' contents, DIA did not inform either the Court or Plaintiff that
> the documents in the boxes might be misfiled until May 2021 (and
> DIA has never told the Court that any document might be missing
> from the boxes). Either Defendant's initial 'hand-review' of the

---

[2] Defendant did not immediately file a response to Plaintiff's May 14, 2021, status report because
the Court had already ordered Defendant to file a Status Report on June 7, 2021, and Defendant
intended to respond in this June 2021 report.

boxes was so cursory that it did not indicate to DIA itself that the folders were empty or contained the wrong documents, or DIA chose not to inform the Court and Plaintiff of that fact. [Id. at ¶ 9.]

9.   Defendant responds as follows:

Plaintiff's assertions that Defendant made material misstatements or omissions in its communications with Plaintiff or the Court, intentionally did not disclose significant information about the content of the boxes, or otherwise engaged in misconduct are false, unsubstantiated, and inappropriate. At the time that DIA prepared for review the 31 documents Plaintiff listed in Appendix A, Defendant's staff responsible for handling the preliminary clerical phase of preparing this narrowed FOIA request for processing simply removed each document from the folder at the location identified in the inventory and scanned the document into the FOIA system to be processed. During and after this rote uploading, DIA did not compare the name of each document in the folder location to the name of the document listed on Plaintiff's Appendix or the name listed on the inventory because, at no time prior to May 2021, did Defendant have any reason to believe that any of the documents in the box were different in substance than the documents listed on the NARA-created inventories.

In its first interim response, which was issued on December 10, 2019, DIA informed Plaintiff that Document 2 of Appendix A ("3/17/89 End of Tour Report (LtGen Perroots)") was not found in the boxes, and that follow up inquiries to locate the document were unsuccessful. Only on or about May 5, 2021, did DIA learn for the first time of another discrepancy between the content of the boxes and the items listed on the inventories, when Plaintiff notified Defendant that the document that DIA had processed and released as Document No. 1 of Appendix A was not the same document described in the inventories. As reflected in Defendant's Status Report [ECF No. 37], this prompted

DIA to conduct a by-hand review of all documents in the three boxes on May 12, 2021, to determine whether the record identified as Document No. 1 in Appendix A ("1/9/89 End of Tour Report (Addendum) General Perroots") might be at another location within the three boxes.  It was not.  Additionally, given the discrepancy regarding Document No. 1 that Plaintiff brought to DIA's attention, DIA subsequently conducted a further by-hand review that compared the contents of the boxes to the list of contents in the inventories to confirm that there were no more discrepancies between the inventories and the boxes' contents than had previously been noted.  That review found no other discrepancies between the items listed on the inventories and the contents of the boxes.

**Plaintiff's Allegations that**
**Defendant Misplaced Documents**

10.     Plaintiff's May 14 Status Report asserts as follows:

> "If Defendant has in fact misplaced Document No. 1 (and Document No. 2, which it indicated was not in the boxes in December 2019), then Defendant is acknowledging that it failed to comply with federal requirements and its own policies governing how to properly safeguard documents containing certain sensitive information.  *See* Exec. Order No. 13526, 75 Fed. Reg. 707 (2009); 32 C.F.R. § 2001, *et seq*."  ECF No. 38 at ¶ 7.

11.     Plaintiff has no factual basis for its allegation that DIA has lost documents that were contained in the three boxes; this is confirmed by the fact that Plaintiff fails to point to any evidence.  To the contrary, DIA has not, at any time since receiving the three boxes from the records center in response to Plaintiff's FOIA request, located within the boxes the documents identified as "Document No. 1" or "Document No. 2" on Appendix A.  In other words, contrary to Plaintiff's assertions, DIA did not remove the documents from the boxes and misplace them.

**Plaintiff's Requests for Declarations**

12.    In the May 14 Status Report, Plaintiff's asks the Court to:

> direct DIA to produce a declaration or declarations by the
> employee(s) who was primarily responsible for conducting the two
> 'hand-reviews' of the three boxes at issue, by a date certain to be
> established by the Court. Plaintiff requests that the affidavits include
> the following details describing how each review was conducted:
> which DIA staff were involved in the file review (if more than one),
> the date on which each review was conducted, the time it took to
> complete each review, and whether the reviewer looked at
> individual pages of all the documents in the boxes or only looked at
> folders containing documents.   [ECF No. 38 at ¶ 12.]

13.    DIA objects to this request and asks that the Court deny it for multiple reasons.  First, if

Plaintiff had bothered to confer with DIA before making its demands to the Court, it would

have learned that DIA was willing to provide some additional information regarding the

search via email, which is a process far less time- and resource-consuming than preparing

formal declarations.

14.    Second, if Plaintiff had conferred with DIA, it would have also learned that the type of

searches conducted by DIA would have already uncovered Document No. 1 and Document

No. 2, if either record were in any of the three boxes.  Specifically, as previously noted, in

addition to conducting the by-hand search on May 12, 2021, to confirm that Document No.

1 (the End of Tour Report (Addendum)) was not misfiled within the boxes, Defendant

subsequently conducted a further by-hand review that compared the documents listed on

the inventories to the documents within the boxes to confirm that there were no other

discrepancies between the inventories and the contents of the boxes.  Both of these reviews

required looking at each document in the boxes, not simply looking at the folders contained

in the boxes and, thus, they would have resulted in locating Document No. 1 and Document

No. 2 if they were in any of the three boxes.

15.     Third, if Plaintiff wants a declaration regarding the search, then Plaintiff (like any other
        FOIA requester in litigation) can wait to obtain such a declaration until the parties submit
        summary judgment briefing or during pre-briefing negotiations when the parties are
        conferring regarding withholdings.  There is no legitimate reason to litigate this matter
        piecemeal by forcing Defendant to prepare a search-focused declaration now, then prepare
        a separate declaration in connection with assertion of its exemptions.  Moreover, Plaintiff's
        demand for declarations asks the Court to Order DIA to disclose more information that it
        would necessarily be required to disclose in a declaration in support of summary judgment
        briefing.  For example, in a search-focused declaration supporting a motion, DIA would
        not necessarily be required to disclose the name of each and every individual who
        conducted the searches, the amount of time each search took, or whether the reviewer
        looked at each individual page during each discrete phase of the processing of Plaintiff's
        request.

**Plaintiff's Requests for**
**Searches Beyond the Three Boxes**

16.     In the May 14 Status Report, Plaintiff asks this Court to grant relief to which Plaintiff
        would not be entitled even if it succeeded on all claims asserted in the Complaint.
        Specifically, the Status Report states:

> Plaintiff requests that the Court direct DIA to conduct a thorough
> search for Document Nos. 1 and 2, including in the three boxes and
> elsewhere, pursuant to 5 U.S.C. § 552(a)(3).  [ECF No. 38 at ¶ 13.]

17.     DIA objects to this request because (i) as explained above, Defendant has already
        thoroughly searched the three boxes; and (ii) the search Plaintiff asks the Court to order
        goes beyond the scope of the FOIA request.  It is important to remember that Plaintiff's
        FOIA request, as drafted, was expressly limited to seeking records located in three

specifically-identified boxes. An agency must "read FOIA requests 'as drafted,'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)). "[A]gencies are not obligated to search 'beyond the four corners of the request,'" as defined by the requester's description of the records sought, "'nor are they required to divine a requester's intent.'" *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 160 (D.D.C. 2018) (quoting *Am. Chemistry Council, Inc. v. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013)).

18. Consequently, even if Plaintiff had not narrowed the request during litigation to only seek 31 documents, Plaintiff still would not have received Document No. 1 and Document No. 2 because those documents were not in the referenced boxes when the documents were provided to DIA. Put another way: Plaintiff's FOIA request did not request that Defendant search for and produce the "End of Tour Report (Addendum) General Perroots" identified as Document No. 1 in Appendix A, nor did the request seek the "End of Tour Report (LtGen Perroots)" that is identified as Document No. 2 in Appendix A. Instead, it sought the documents within the three identified boxes.

19. The fact that two of the documents that Plaintiff would like to receive are not found within the boxes that encompass the full scope of the records Plaintiff actually requested is irrelevant. *See Amadis*, 971 F.3d at 370; *Poitras*, 303 F. Supp. 3d at 160. Plaintiff cannot now re-write its FOIA request (and its Complaint) to encompass records that require

conducting a wholly different search for specific documents. If Plaintiff wants these documents, it is free to submit a new FOIA request.

Dated: June 7, 2021                              Respectfully submitted,

                                                 CHANNING D. PHILLIPS
                                                 D.C. Bar No. 415793
                                                 Acting United States Attorney

                                                 BRIAN P. HUDAK
                                                 Acting Chief, Civil Division

                                                 By: */s/  April Denise Seabrook*
                                                 APRIL DENISE SEABROOK
                                                 D.C. Bar No. 993730
                                                 Assistant United States Attorney
                                                 555 4th Street, N.W.
                                                 Washington, D.C. 20530
                                                 (202) 252-2525
                                                 April.Seabrook@usdoj.gov

**Appendix A**

| Index Title | Document Title |
|---|---|
| 1. Box 1 Inventory 2 | 1/9/89 End of Tour Report (Addendum) General Perroots |
| 2. Box 1 Inventory 2 | 3/17/89 End of Tour Report (LtGen Perroots) |
| 3. Box 1 Inventory 2 | 4/21/89 New Info on the Soviet BACKFIRE Bomber |
| 4. Box 1 Inventory 4 | 3/21/89 Ltr to redacted re Soviet Threat to C3 |
| 5. Box 1 Inventory 4 | 3/20/89 OJCS Summary Sheet, 1962 Cuban Missile Crisis |
| 6. Box 1 Inventory 4 | 3/16/89 Fully redacted title |
| 7. Box 1 Inventory 5 | 4/3/89 Fully redacted title |
| 8. Box 1 Inventory 6 | 5/12/89 Fully redacted title |
| 9. Box 1 Inventory 6 | 5/10/89 Routine Msg SACEUR and USNMR SHAPE BE, re: WARSAW Pact Command Information |
| 10. Box 1 Inventory 6 | 5/9/89 Priority Msg to USNMR SHAPE BE and USCINCEUR VAIHINGEN GE, re: Contrasting Views |
| 11. Box 1 Inventory 8 | 4/21/89 MEMO FOR DASOD, Nuclear Forces and Arms Control Policy, OASD(ISP), re Report on Exercise WINTEX-CIMEX 89 |
| 12. Box 1 Inventory 9 | 1/19/89 OJCS Summary Sheet, CJCS Letter "EMP Warplan" |
| 13. Box 1 Inventory 9 | 1/18/1989 Position Paper, Soviet Foreign Minister Shevardnadze Speech to the Paris Chemical Warfare (CW) Conference |
| 14. Box 1 Inventory 9 | 1/31/89 Memo for ASD(AE), Soviet Obscurants and Competitive Strategies |
| 15. Box 1 Inventory 10 | 2/10/89 Position Paper, Warsaw Pact Release of Military Data |
| 16. Box 1 Inventory 10 | 2/1/89 Memo for USDA, Intelligence Community Work Dealing with Indication and Warnings |
| 17. Box 1 Inventory 11 | 2/24/89 Position Paper, Soviet Reaction to exercise PASEX-89 |
| 18. Box 1 Inventory 11 | 2/23/89 Memo for C/JCS, re Special National Intelligence Est |
| 19. Box 2 Inventory 1 | 5/20/89 Document awaiting consultation review |
| 20. Box 2 Inventory 1 | 5/19/89 Priority Msg to US MISSION NATO BRUSSELS BE, re: Soviet Production |
| 21. Box 2 Inventory 3 | 6/6/89 Ltr Honorable Warner, re: Info on status of Soviet Strategic Target Data Base |

| 22. Box 2 Inventory 7 | 9/14/89 Memo for Sec Def, Composition of the Soviet Chemical Stockpile |
|---|---|
| 23. Box 2 Inventory 7 | 9/7/89 Memo for DCI, Senate Select Committee on Intelligence classified Supplement to Report No. 101-78 |
| 24. Box 2 Inventory 11 | 9/29/89 Document title classified in full |
| 25. Box 3 Inventory 1 | 12/27/89 Routine msg to multiple addressees, Briefing on Warning of War |
| 26. Box 3 Inventory 2 | 12/14/89 Memo for DUSD(SP), DoD Counterintelligence: Past, Present, Prologue |
| 27. Box 3 Inventory 2 | 12/5/89 Immediate msg to NAMILCON/USREPMC Brussels, NATO Intelligence |
| 28. Box 3 Inventory 3 | 11/30/89 Priority msg to NAMILCOM Brussels, The Changing Role of Intelligence |
| 29. Box 3 Inventory 3 | 11/29/89 Ltr to D/SAF/SS, DIA SIGINT Panel Report |
| 30 Box 3 Inventory 3 | 11/21/89 Memo for Dep Sec, Briefing on Soviet Capabilities - INFO MEMO |
| 31. Box 3 Inventory 3 | 11/20/89 TORs (4) on Intelligence Production, DIA Modernization, Intelligence Support to the U and S Commands, and Intelligence Support for Arms Control Monitoring |